☑ Original    ☐ Dupl



CLERK'S OFFICE
A TRUE COPY
Jul 27, 2023
s/ Laura Cronin
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| Records and information associated with Amanda Deberry's number (414) 982-9371; ███████ | ) |
| ███████; and Johanna Grace's number (414) 507-2171; Target Cell Phones | ) |

Case No.23-973M(NJ)

**Matter No.: 2023R00184**

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Eastern_____ District of _____Wisconsin_____ *(identify the person or describe the property to be searched and give its location)*:

See Attachment A; over which this Court has jurisdiction pursuant to 18 U.S.C. §§ 2703 and 2711 and Federal Rule of Criminal Procedure 41.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before August 10, 2023 _____ *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.   ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Hon. Nancy Joseph_____.
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: 7/27/2023   @ 5:14 pm

*Judge's signature*

City and state:   Milwaukee, WI

Hon. Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**ATTACHMENT A**

**Matter No. 2023R00184**

**Property to Be Searched**

1. Records and information associated with the following cellular telephones (collectively, the "Target Cell Phones"):

    a. the phone assigned cellular telephone call number (414) 982-9371 ("Target Device-1"), with service provided by Sprint, subscribed to by AMANDA DEBERRY;

    b. the phone assigned cellular telephone call number ███████ ("Target Device-2"), with service provided by T-Mobile, subscribed to by ████ ████████;

    c. the phone assigned cellular telephone number ███████ ("Target Device-3"), with service provided by AT&T, believed to be used by ████████; and,

    d. the phone assigned cellular telephone number (414) 507-2171 ("Target Device-4"), with service provided by U.S. Cellular (collectively with Sprint, AT&T, and T-Mobile, the "Service Providers"), believed to be used by JOHANNA GRACE.

2. The Target Cell Phones.

## ATTACHMENT B

## Matter No. 2023R00184

## Particular Things to be Seized

### I. Information To Be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of a Service Provider, including any information that has been deleted but is still available to a Service Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), a Service Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A.

    a. The following subscriber and historical information about the customers or subscribers associated with the Target Cell Phones for the time period of **January 1, 2023 – Current Date**:

        i. Names (including subscriber names, usernames, and screen names);

        ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii. Local and long-distance telephone connection records;

        iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v. Length of service (including start date) and types of service utilized;

        vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

        vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Cell Phone, including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

(B) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received) as well as per-call measurement data (also known as "real-time tool" or "RTT").

b. Information associated with each communication to and from the Target Cell Phones for a period of 30 days from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii. Source and destination telephone numbers;

iii. Date, time, and duration of communication; and

iv. All data about the cell towers (i.e., antenna towers covering specific geographic areas) and sectors (i.e., faces of the towers) to which the Target Cell Phone will connect at the beginning and end of each communication, as well as per-call measurement data (also known as "real-time tool" or "RTT").

The Court has also issued an order pursuant to 18 U.S.C. § 3123, dated today, for such information associated with the Target Cell Phones.

c. Information about the location of the Target Cell Phones for a period of 30 days, during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location Information to the government. In addition, the Provider must furnish the government all information, facilities, and technical assistance necessary to

25

accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Provider for reasonable expenses incurred in furnishing such facilities or assistance.

ii. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence of the violation of federal law, including 18 U.S.C. §§ 371, 1512, and 1791 (the "SUBJECT OFFENSES").

26

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin



CLERK'S OFFICE
A TRUE COPY
Jul 27, 2023
s/ Laura Cronin
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br><br>Records and information associated with Amanda Deberry's number<br>(414) 982-9371; ▮▮▮▮▮▮▮▮▮▮▮; and Johanna Grace's number (414) 507-2171; Target Cell<br>Phones | )<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. 23-973M(NJ)

**Matter No.: 2023R00184**

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A; over which this Court has jurisdiction pursuant to 18 U.S.C. §§ 2703 and 2711 and Federal Rule of Criminal Procedure 41.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C §§ 371; 1512 and 1791 | Conspiracy to commit offense or to defraud United States; tampering with a witness, victim, or an informant; and providing or possessing contraband in prison |

The application is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*dalton evertz*

*Applicant's signature*

SA Dalton R. Evertz, ATF

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
telephone _____ *(specify reliable electronic means)*.

Date: 7/27/2023 _____

*Judge's signature*

City and state: Milwaukee, WI _____

Hon. Nancy Joseph, U.S. Magistrate Judge

*Printed name and title*

# AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT
## Matter No. 2023R00184

I, ATF SA Dalton Evertz, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the following cellular telephones (collectively, the "Target Cell Phones"):

- the phone assigned cellular telephone call number (414) 982-9371 ("Target Device-1"), with service provided by Sprint, subscribed to by AMANDA DEBERRY;

- the phone assigned cellular telephone call number ███████ ("Target Device-2"), with service provided by T-Mobile, subscribed to by ███████;

- the phone assigned cellular telephone number ███████ ("Target Device-3"), with service provided by AT&T, believed to be used by ███████; and,

- the phone assigned cellular telephone number (414) 507-2171 ("Target Device-4"), with service provided by U.S. Cellular (collectively with Sprint, AT&T, and T-Mobile, the "Service Providers"), believed to be used by JOHANNA GRACE.

1.      In this application, the United States seeks (1) historical cell-site location information; (2) historical precision location information; (3) prospective, real-time cell-site location information; (4) prospective, real-time precision location information (i.e., E-911 Phase II data and GPS); and (5) subscriber information and other historic non-content records and information.

2.      Because this warrant application seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," see 18 U.S.C. § 3127(3)

& (4), I also make this affidavit in support of an application by the United States of America for an order pursuant to 18 U.S.C §§ 3122 and 3123, authorizing the installation and use of pen registers and trap and trace devices ("pen-trap devices") to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the Target Cell Phones.

3.     I am a Special Agent of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") currently assigned to the Milwaukee Field Office. As such, I am an investigative or law enforcement agent of the United States authorized under Title 18, United States Code, Section 3051, that is, an officer of the United States who is empowered by law to conduct investigations, to make arrests, and to collect evidence for various violations of federal law. I have been employed as a Special Agent of the ATF since October 2018.

4.     This affidavit is based on my training, experience, personal knowledge, and observations in this investigation; upon my discussions with other law enforcement officers and agents involved in this investigation; and, upon my review of official reports submitted in relation to this investigation.

5.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other law enforcement officers and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6.     Based on my training and experience and the facts as set forth in this Affidavit, I submit that there is probable cause to believe that GRACE, DEBERRY, ███████, and others have committed violations of 18 U.S.C. §§ 371, 1512, and 1791 (the "SUBJECT OFFENSES") and that evidence probative of such crimes is likely to be found in the location data associated

with the Target Cell Phones – particularly since the location data associated with the Target Cell Phones will assist law enforcement in determining the physical location of the Target Cell Phones themselves, which are likely to contain record evidence of the SUBJECT OFFENSES.

## JURISDICTION

7. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A).  Specifically, this Court is "a district court of the United States that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

8. Law enforcement is investigating allegations of misconduct, corruption, and obstruction by former Correctional Staff employed by the Waukesha County Sheriff's Office ("WCSO"), who used their positions to provide contraband to federal inmates at the Waukesha County Jail, a correctional facility located in the Eastern District of Wisconsin that maintains an agreement with United States Marshal Service to detain federal prisoners.

*The April 2023 Tip & Search*

9. On April 13, 2023, a clerk at the Waukesha County Jail received a call from a female ("INDIVIDUAL-1") who advised that inmate MICHAEL WRIGHT, a federal inmate who has been in custody at the Waukesha County Jail since October 20, 2021, and is currently awaiting disposition in a multi-defendant federal case (*see* 21-CR-204), was in possession of an Apple iPhone. INDIVIDUAL-1 further stated that the iPhone was given to Inmate WRIGHT by staff at the jail. It was determined that Inmate WRIGHT was housed in cell 709, located in Pod 7 at the Waukesha County Jail, and that a search would be conducted of Inmate WRIGHT's cell.

10. During the search of Inmate WRIGHT's cell, which was conducted on April 13, 2023, a Waukesha County Corrections Officer located a pair of white headphones and a white

charging cord for an Apple iPhone, hidden inside a fruit snack bag. Jail staff did not locate an Apple iPhone or any other cellular device in Inmate WRIGHT's cell. Inmate WRIGHT was questioned by jail staff about the phone charging cord and headphones and Inmate WRIGHT eventually admitted that a former Correctional Officer, identified as AMANDA DEBERRY, provided these items to him. Inmate WRIGHT stated that DEBERRY was supposed to bring him a phone but that she did not do so. Inmate WRIGHT further stated that DEBERRY may have gotten scared and did not follow through with bringing a phone into the jail.

11.     In addition to Inmate WRIGHT admitting that DEBERRY provided the phone charging cord and headphones to him, Inmate WRIGHT showed Corrections Staff an email he received via the Waukesha County Jail's messaging service. The email, dated April 8, 2023, identified the sender as "Amanda Deberry" and stated, "Hello Mr Wright long time no see lol would send y a pic but u might show my shit or get in trouble." The message concluded with three emojis commonly referred to as "The Beaming Face with Smiling Eyes."

12.     According to information provided by the WCSO, DEBERRY was hired as a Corrections Officer on September 10, 2022. DEBERRY provided telephone number 414-982-9371 ("Target Device-1") as her telephone number. DEBERRY resigned from the WCSO on or about March 23, 2023.

13.     According to information received by Sprint pursuant to a subpoena, Target Device-1 has been subscribed to by DEBERRY since October 5, 2007, with a subscriber address of 3252 North 42nd Street, Milwaukee, WI 53216. An open-source search of the IMEI number associated with Target Device-1 revealed the device to be an Apple iPhone.

14.     After the interview of Inmate WRIGHT, it was determined that a full search of Pod 7, where Inmate WRIGHT's cell was located, would be conducted. Corrections staff eventually

located an Apple iPhone in cell 717, occupied by inmate RAMONE LOCKE, a federal inmate who has been in custody at the Waukesha County Jail since August 26, 2022, and is currently awaiting disposition in a separate multi-defendant federal case. *See* 22-cr-133.

15. Law enforcement obtained a search warrant authorizing the forensic download of the Apple iPhone located in Inmate LOCKE's cell, and the same was conducted by the WCSO. Based on a review of the forensic download, it appeared the phone was activated on March 22, 2023, at approximately 10:37am and was assigned telephone number 414-885-9950. Of note, the forensic download included numerous communications with telephone number ▆▆▆▆▆ ("Target Device-2"), to include communications on the day the phone was activated, and over 300 text messages with telephone number ▆▆▆▆▆ ("Target Device-3").

16. According to information received by T-Mobile pursuant to a State of Wisconsin Warrant for Records, Target Device-2 has been subscribed to by ▆▆▆▆ since October 7, 2022, with a subscriber address of ▆▆▆▆▆▆▆▆▆ is believed to be a girlfriend of Inmate LOCKE's. An open-source search of the IMEI number associated with Target Device-2 revealed the device to be an Apple iPhone.

17. According to information received by AT&T pursuant to a State of Wisconsin Warrant for Records, Target Device-3 has been subscribed to by "Dish Wireless LLC" since January 13, 2023, with a subscriber address of 9601 South Meridian Boulevard, Englewood, CO 80112. An open-source search of the IMEI number associated with Target Device-3 revealed the device to be an Apple iPhone. As further described below, there is probable cause to believe Target Device-3 was used by ▆▆▆▆.

*The April 2023 Delivery*

18.     The WCSO subsequently learned that a vehicle associated with ████████, a ████ ████████████████, was located in the area of the Waukesha County Jail on March 22, 2023—the date the device from LOCKE's cell was activated—at approximately 5:40pm. Based on surveillance footage captured by security cameras located on the Waukesha County Campus, where the Waukesha County Jail is located, the vehicle was observed parking in the Waukesha County Jail parking lot near the main entrance at approximately 5:45pm. At approximately 6:00pm, while the vehicle was parked in the Waukesha County Jail parking lot, DEBERRY was observed exiting the secure confines of the jail and meeting with the operator of the ████████ ████████, believed to be ████████. DEBERRY obtained a fast-food bag from Chick-Fil-A and a beverage cup from the operator of the ████████████████ and then re-entered the Waukesha County Jail with these items in her possession. DEBERRY was observed returning to her post in Pod 7 with the Chick-Fil-A bag. At approximately 6:12pm, DEBERRY and another Corrections Officer were observed conducting a search of Inmate LOCKE's cell. Of note, while DEBERRY conducted the search of Inmate LOCKE's cell, the other Corrections Officer had his back to DEBERRY in order to monitor the inmates in Pod 7. The search of Inmate LOCKE's cell was concluded at approximately 6:15pm.

19.     Based on my training and experience, I know that people commonly communicate and coordinate their schedules using cellular devices. At this time, the investigation has not revealed how DEBERRY and ████████ know each other. Despite that, DEBERRY met with the operator of the ████████████████, believed to be ████████, shortly after the vehicle arrived at the Waukesha County Jail and was observed bringing a bag containing what is believed to be a cellphone into the jail for LOCKE. Because people commonly communicate and coordinate

their schedules using cellular devices, and because DEBERRY met with the operator of the ███

███████████ shortly after it arrived at the Waukesha County Jail, there is probable cause

to believe DEBERRY and ██████ used Target Device-1, Target Device-2, and Target Device-

3 to communicate with each other[1] and facilitate the delivery of the device ultimately recovered in

LOCKE's cell.

20.     A review of the call detail records for Target Device-2, according to information

received by T-Mobile pursuant to a State of Wisconsin Warrant for Records, revealed ██████,

using Target Device-2, communicated with Inmate LOCKE on the cellular telephone that was

located in Inmate LOCKE's cell on April 14, 2023. Between March 27, 2023 and April 13, 2023,

Target Device-2 exchanged at least 15 telephone calls or text messages with the cellular telephone

that was ultimately located in Inmate LOCKE's cell.

21.     A review of the call detail records for Target Device-3, according to information

received by AT&T pursuant to a State of Wisconsin Warrant for Records, revealed ██████,

also used Target Device-3 to communicate with Inmate LOCKE on the cellular telephone that was

ultimately located in Inmate LOCKE's cell. Between March 25, 2023, and April 13, 2023, Target

Device-3 exchanged at least 59 telephone calls with the cellular telephone that was located in

Inmate LOCKE's cell on April 14, 2023.

22.     As previously stated in this Affidavit, a review of the forensic download of the

Apple iPhone located in Inmate LOCKE's cell revealed Target Device-3, believed to be used by

---

[1] A review of the call detail records for Target Device-1 for the relevant time period revealed two incoming text messages and one outgoing text message with Target Device-2, as well as three outgoing telephone calls to Target Device-3; however, these text messages and telephone calls were exchanged on March 23, 2023 – the day after ██████ is believed to have provided DEBERRY with the cellular telephone in question. However, a telecommunications provider, such as T-Mobile, cannot provide information about Apple iMessage traffic because iMessages are sent through the internet rather than through a telecommunications provider. As such, there is reason to believe Target Device-1, Target Device-2, and Target Device-3 exchanged additional communications not reflected in the call detail records for Target Device-1, Target Device-2, or Target Device-3.

████, exchanged over 300 text messages with Inmate LOCKE. The text messages exchanged between Inmate LOCKE and ████ using Target Device-3 revealed that ████ was not only the user of the device, but that she was potentially aware of a relationship between Inmate LOCKE and DEBERRY. For example:

    a. On April 13, 2023, Inmate LOCKE sent Target Device-3 an iMessage which stated, "I called both yo phones." Later on April 13, 2023, Inmate LOCKE sent Target Device-3 an iMessage which stated, "Ok ███ gn."

    b. On April 27, 2023, Target Device-3 sent an iMessage to Inmate LOCKE which stated, "How come you didn't call me." In response, Inmate LOCKE stated, "Dey locked us in early baby." Based on my knowledge of this investigation, I believe "Dey" to be either an abbreviated reference to DEBERRY or a "slang" spelling of "they," meaning the correctional staff.

23.    Law enforcement has currently paused its review of the cellphone recovered from Inmate LOCKE's cell, after reviewing messages that are believed to be exchanged by Inmate LOCKE and a third-party regarding Inmate LOCKE's communications with his counsel in his pending matter. To be clear, neither these messages nor any others reviewed by law enforcement are subject to any attorney-client privilege; indeed, the messages that prompted this pause could not be subject to such a privilege, insofar as they are believed to be between Inmate LOCKE and a non-lawyer. Nevertheless, law enforcement, working with the United States Attorney's Office, has implemented a "filter team" and related protocol to inoculate against the risk that members of the prosecution team here would encounter privileged material.

*Follow-up Interview and Additional Information provided by INDIVIDUAL-1*

24.     On April 17, 2023, Waukesha County Sheriff's Department Detective Nathan Plennes re-contacted INDIVIDUAL-1. INDIVIDUAL-1 advised Detective Plennes that she and Inmate WRIGHT were in an "on again and off again" relationship and had been since Inmate WRIGHT was incarcerated. INDIVIDUAL-1 further advised that she had been purchasing ICare packages[2] for Inmate WRIGHT on a weekly basis up until approximately July 2022. In July 2022, INDIVIDUAL-1 attempted to purchase an ICare package for Inmate WRIGHT; however, the request was denied because Inmate WRIGHT had reached his allotted ICare limit for the week. INDIVIDUAL-1 questioned Inmate WRIGHT about this and inquired as to who was purchasing ICare packages for him. Inmate WRIGHT stated that a Corrections Officer had been purchasing ICare packages for him, that the Corrections Officer owed him, and that "she" (referring to the Corrections Officer) was taking care of him.

25.     INDIVIDUAL-1 further advised Detective Plennes that after the aforementioned ICare incident, Inmate WRIGHT stopped accepting INDIVIDUAL-1's visits. INDIVIDUAL-1 subsequently began receiving calls from other inmates who made statements to the effect of, "Mike said he loves you," and "misses you." These other inmates also told INDIVIDUAL-1 that there was "something going on in here, he (referring to Inmate WRIGHT) can't get on the phone right now." Upon Inmate WRIGHT's request, INDIVIDUAL-1 changed her telephone number, but INDIVIDUAL-1 felt that "she" (referring to the Corrections Officer) figured out INDIVIDUAL-1's new telephone number. INDIVIDUAL-1 told Detective Plennes that during one particular call

---

[2] ICare packages can contain hygiene items, food and other items available to inmates through commissary.  These packages are purchased for inmates by loved ones, friends, acquaintances or anyone who wishes to provide one of these packages for an inmate that is incarcerated at the Waukesha County Jail.

with Inmate WRIGHT, Inmate WRIGHT admitted he was "dealing" with a Corrections Officer and "she" did not like him talking to INDIVIDUAL-1.

26.     INDIVIDUAL-1 further advised Detective Plennes that she subsequently called the Waukesha County Jail and advised a male supervisor that she believed Inmate WRIGHT was having a relationship with a Corrections Officer. INDIVIDUAL-1 stated she received a follow-up call from a female with the Waukesha County Jail named "Grace" or "Grayson," and the Waukesha County Sheriff's Department subsequently confirmed GRACE was the Correctional Officer INDIVIDUAL-1 spoke to. INDIVIDUAL-1 stated the conversation with GRACE was abnormal and further stated that she believed GRACE was simply trying to find out if Inmate WRIGHT was still communicating with INDIVIDUAL-1. GRACE informed INDIVIDUAL-1 that the Waukesha County Jail looked into her complaint and spoke to Inmate WRIGHT. According to INDIVIDUAL-1, GRACE told INDIVIDUAL-1 that Inmate WRIGHT told her (GRACE) that INDIVIDUAL-1 was "just a mad girlfriend" and that Inmate WRIGHT did not want to be with INDIVIDUAL-1 anymore. INDIVIDUAL-1 told GRACE that she received a letter from Inmate WRIGHT stating that he has a "CO girlfriend" that was not letting Inmate WRIGHT talk to INDIVIDUAL-1 and also blocked INDIVIDUAL-1's telephone number. GRACE requested that INDIVIDUAL-1 email a copy of the letter to her and provided INDIVIDUAL-1 with a personal email address rather than a Waukesha County email address.

27.     INDIVIDUAL-1 further advised Detective Plennes that she spoke with Inmate WRIGHT after the aforementioned conversation with GRACE and advised Inmate WRIGHT that she spoke to GRACE. INDIVIDUAL-1 asked Inmate WRIGHT if GRACE was the Corrections Officer he was involved with, and Inmate WRIGHT confirmed that it was in fact GRACE.

28.     INDIVIDUAL-1 further advised Detective Plennes that beginning on March 17, 2023, she started receiving text messages from Inmate WRIGHT. INDIVIDUAL-1 did not believe it was Inmate WRIGHT at first, so she requested that Inmate WRIGHT initiate a FaceTime call. INDIVIDUAL-1 stated Inmate WRIGHT initiated a FaceTime call, which confirmed Inmate WRIGHT had a cellular telephone in his possession. INDIVIDUAL-1 expressed her displeasure that Inmate WRIGHT allowed someone to come between them, referring to GRACE. Inmate WRIGHT requested INDIVIDUAL-1 setup a visit with him at the Waukesha County Jail, which INDIVIDUAL-1 subsequently did. During the visit, Inmate WRIGHT told INDIVIDUAL-1 that "she" blocked INDIVIDUAL-1's telephone number so that Inmate WRIGHT could not contact INDIVIDUAL-1.

29.     INDIVIDUAL-1 further advised Detective Plennes that after she contacted the Waukesha County Jail on April 13, 2023, regarding the initial information associated with the cellular telephone in the Waukesha County Jail, she received a follow-up call from Corrections Lieutenant Daily. INDIVIDUAL-1 stated she provided Lieutenant Daily with screenshots from several of her and Inmate WRIGHT's FaceTime conversations while he was using a cellular telephone in the jail.

30.     INDIVIDUAL-1 further advised Detective Plennes that on April 15, 2023, she ran into Inmate WRIGHT's cousin, "Big Bub," who has been identified as DARRON JACKSON. INDIVIDUAL-1 stated JACKSON questioned her about her recent contact with the Waukesha County Jail. JACKSON then showed INDIVIDUAL-1 several text messages on his cellular telephone that contained pictures of a report containing all the information INDIVIDUAL-1 provided to the Waukesha County Jail on April 13, 2023, along with the screenshots of the FaceTime conversations between INDIVIDUAL-1 and Inmate WRIGHT that she provided to

Lieutenant Daily[3]. JACKSON read the information aloud to INDIVIDUAL-1 and INDIVIDUAL-1 confirmed all the information that was read to her was exactly as she told it to the Waukesha County Jail. JACKSON further advised INDIVIDUAL-1 that the lady (GRACE) was "still working" and that "she" (GRACE) said they were on "her bumper".

31.     On April 24, 2023, Detective Plennes spoke with INDIVIDUAL-1 again. INDIVIDUAL-1 stated she ran into JACKSON at a Walmart located in Racine, WI over the weekend. JACKSON told INDIVIDUAL-1 that Inmate WRIGHT arranged for JACKSON to purchase the cellular telephone that WRIGHT had been using. JACKSON also told INDIVIDUAL-1 that he dropped the cellular telephone off with GRACE so GRACE could bring the cellular telephone into the jail for WRIGHT. INDIVIDUAL-1 further advised that JACKSON stated he received money from GRACE and used the money to purchase ICare packages for Inmate WRIGHT at GRACE's direction.

*Search of GRACE's earlier cellular telephone*

32.     On April 18, 2023, following a non-custodial interview with GRACE, Detective Plennes seized GRACE's the cellular telephone GRACE was using at that time, which was assigned telephone number 414-817-4174. On May 9, 2023, Detective Plennes obtained a state of Wisconsin search warrant for the cellular telephone and a copy of the associated forensic download was subsequently provided to the FBI.

33.     A review of the forensic download revealed GRACE provided Inmate WRIGHT with cellular telephones on two separate occasions. The cellular telephones were assigned

---

[3] According to the Waukesha County Sheriff's Department, the report that is referred to here is an internal jail matter of record pertaining to the complaint INDIVIDUAL-1 called in to the Waukesha County Jail on April 13, 2023. GRACE authored the original report and Lieutenant Daily added additional information to the report after he spoke to INDIVIDUAL-1 on April 13, 2023. This report is emailed to all supervisors in the jail every time updated information is added. GRACE would have received this information and would have had access to the report anytime she accessed her county email.

telephone numbers 262-301-0823 and 262-977-5633, consistent with the information provided by INDIVIDUAL-1 as the cellular telephone numbers that she communicated with WRIGHT on, as indicated above.

34.     According to information received by Verizon pursuant to a State of Wisconsin Warrant for Records, telephone number 262-301-0823 is a TracFone[4] that was activated on March 9, 2023.

35.     Based on a review of text messages contained in GRACE's cellular telephone pursuant to the State of Wisconsin search warrant, it is believed GRACE brought the device assigned telephone number 262-301-0823 into the secure confines of the Waukesha County Jail and provided it to Inmate WRIGHT on or about March 12, 2023. As further detailed below, the cellular telephone was provided to GRACE on March 11, 2023 by JACKSON, previously identified as WRIGHT's cousin.

36.     The following contains excerpts of text messages exchanged between GRACE and JACKSON between March 9, 2023 and March 12, 2023:

*March 9, 2023*
GRACE: "He want a phone"
JACKSON: "I knew he would"
GRACE: "Just find out how much it will cost for phone and service… He don't need a charger piece because he said when it go dead he gone have me charge it. They don't have outlets in their cell"

*March 11, 2023*
JACKSON: (screenshot of an individual holding an Apple iPhone with several blank fields required to "Complete your Apple ID")
GRACE: "2612 west Hadley st Milwaukee Wisconsin 53206 and put a random number"
JACKSON: "Was that yo address you sent me"
GRACE: "Yeah why"
JACKSON: "Cause I was just gone pull up and drop it off real quick I'm 10 mins away or you can come to Mayfair and get it"
GRACE: "I'm still in the tub.. you pull up and put it in the mailbox…"

---

[4] A subsidiary of Verizon Communications, TracFone (TracFone Wireless, Inc.) is an American prepaid, no-contract mobile phone provider.

JACKSON: "It's in there have somebody grab it cause somebody just seen me out it in there"
GRACE: "Okay I got you"

*March 12, 2023*
GRACE: "I never wrote his number down"
JACKSON: "I got it"
GRACE: "Ok imma see if he gone text me"
JACKSON: (sent contact card for "Michael Wright Fed Baby" with telephone number 262-301-0823 as Inmate WRIGHT's number)

37.    According to information received by Verizon pursuant to a State of Wisconsin Warrant for Records, telephone number 262-977-5633 is also a TracFone, activated on April 3, 2023.

38.    Based on a review of text messages contained in GRACE's cellular telephone pursuant to the state of Wisconsin search warrant, it is believed GRACE brought the device assigned telephone number 262-977-5633 into the secure confines of the Waukesha County Jail and provided it to Inmate WRIGHT on or about April 7, 2023. As further detailed below, the cellular telephone was provided to GRACE on April 6, 2023, by "Ray Ray," identified as BOBBIE RAY KING JR., a known associate of WRIGHT.

39.    The following contains excerpts of text messages exchanged between GRACE and KING JR. between April 1, 2023 and April 6, 2023:

*April 1, 2023*
GRACE: "Let me know when you ready to go get that phone so I can send you the rest of the money"

*April 3, 2023*
KING JR.: "262-977-5633… The new number… 160 in all"
GRACE: "Huh"
KING JR.: "I got the phone… That's the number"
GRACE: "You didn't set up yet? Do you got Zelle?"
KING JR.: "No I didn't do anything. They just quick set to activate it"
GRACE: "Ok cool I'll set it up"

*April 5, 2023*
KING JR.: "You can meet today"
GRACE: "I can meet you tomorrow and bring you the cash"

*April 6, 2023*
GRACE: "Can you still meet today"
KING JR.: "Yes"
GRACE: "Where and what time"
KING JR.: "Wherever you want and after 3"
GRACE: "Ok are you in Racine"
KING JR.: "Yes I am"
GRACE: "I'm in Milwaukee"
KING JR.: "I know lol"
GRACE: "You want to meet halfway way"
KING JR.: "Yea we can"
GRACE: "We can at ikea… You know where that is"
KING JR.: "Yes"
GRACE: "Ok just hit me up… Are you done yet"
KING JR.: "You ready"
GRACE: "I'm at the house right now making the kids something to eat"
KING JR.: "Drop lo (location)"
GRACE: "2612 W Hadley Street"
KING JR.: "On my way"
GRACE: "Text me when you outside"
KING JR.: "5 minutes"
GRACE: "Ok"
KING JR.: "I'm outside"

40.     Beginning on April 6, 2023, GRACE began exchanging text messages with telephone number 262-977-5633. Of note, GRACE saved telephone number 262-977-5633 in her cellular telephone under the contact "Husband." A review of the text messages GRACE exchanged with 262-977-5633 revealed Inmate WRIGHT to be the operator of the cellular telephone. The text messages between GRACE and Inmate WRIGHT contain multiple videos of GRACE masturbating, videos of Inmate WRIGHT masturbating, sexually explicit dialogue, discussion of their life together, and discussion about their respective families and children.

41.     The text messages exchanged between GRACE and Inmate WRIGHT also contain conversation regarding the cellular telephones GRACE provided to Inmate WRIGHT and the

methods used to provide the cellular telephones to Inmate WRIGHT. The following contains excerpts of text messages exchanged between GRACE and Inmate WRIGHT on April 12, 2023:

> GRACE: "Y'all locking in a 7 pm"
> Inmate WRIGHT: "Why… Why"
> GRACE: "Because short staffed"
> GRACE: "Did you leave me the phone to take ??... Because I was Looking for it"
> Inmate WRIGHT: "Ok n I did the dummy also"
> GRACE: "No you did not"
> Inmate WRIGHT: "I did… I forgot it don't take long to charge left it on there too long"
> GRACE: "I was looking for the phone"
> Inmate WRIGHT: (two laughing emojis)
> GRACE: "What"
> Inmate WRIGHT: "U ain't say nothing… First Stall that's it… I love u call u when u leave… U not going to sleep"
> GRACE: "Why"
> Inmate WRIGHT: "Cause we gone talk n u gotta charge that one more time before you leave"
> GRACE: "I'll just charge both of them"

42.     In addition to providing Inmate WRIGHT with cellular telephones, a review of text messages contained in GRACE's cellular telephone pursuant to the state of Wisconsin search warrant revealed GRACE also provided Inmate WRIGHT with controlled substances. The following contains excerpts of text messages exchanged between GRACE and JACKSON on March 27, 2023:

> GRACE: "I bought him three bags of gummies with thc… Like nigga really got it made"
> JACKSON: "You gone give umm to him"
> GRACE: "He got it already… He don't need me anymore though… Liquor make me act like a nigga.. I shouldn't have gave him all the gummies lmao"
> GRACE: "You know Mike [WRIGHT] are [ate] five gummies yesterday"
> JACKSON: "yea he was high is fuck"

43.     As indicated above, on April 15, 2023, INDIVIDUAL-1 was confronted by JACKSON regarding the information she provided to the Waukesha County Jail on April 13, 2023. A review of text messages contained in GRACE's cellular telephone pursuant to the state of Wisconsin search warrant revealed GRACE disseminated portions of the internal jail report

surrounding the initial complaint filed by INDIVIDUAL-1 to at least four members of the public, including JACKSON. The following contains excerpts of text messages exchanged between GRACE and JACKSON on April 14, 2023:

> JACKSON: "Yoo you had called me"
> GRACE: (Sent two screenshots of Lieutenant Daily's addendum to the report entitled "Wright Michael A -Contraband in Pod in pod 7" containing the information Lieutenant Daily obtained from INDIVIDUAL-1, as well as the screen shots INDIVIDUAL-1 provided of her FaceTime conversations with Inmate WRIGHT)
> JACKSON: "Damnn mannnn wtf she sent all that up there to you or someone else caught that"
> GRACE: "To another supervisor… There is a full investigation going on"
> JACKSON: "On who you"
> GRACE: "I'll be out of a job on Monday"

44. Based on my training and experience, I know that GRACE's relaying INDIVIDUAL-1's cooperation to JACKSON and others was both a flagrant violation of GRACE's duty and extremely dangerous. I know, based on my training and experience, that citizens like INDIVIDUAL-1 who cooperate with law enforcement can face violent reprisals from associates of the persons against whom they cooperated.

45. Following the April 18, 2023, non-custodial interview with GRACE and seizure of the cellular telephone then in GRACE's possession, GRACE was formally terminated from her position later that evening.

46. On or about April 22, 2023, GRACE obtained a new cellular telephone assigned telephone number 414-507-2171 (previously defined as "Target Device-4"). According to information received from U.S. Cellular pursuant to a subpoena, Target Device-4 is subscribed to by a PALMER GRACE, believed to be GRACE's mother, with a billing address of 2612 W. Hadley St., Milwaukee, WI 53206, which is where GRACE resides. U.S. Cellular identified the device as an Apple iPhone Pro Max with IMEI number 35211735387171.

47.     Based on information provided by the WCSO, Inmate WRIGHT began contacting Target Device-4 on April 22, 2023, using the Waukesha County Jail telephone system. Detectives with WCSO have listened to the telephone calls between Inmate WRIGHT and Target Device-4 and determined GRACE to be user of the Target Device. In one particular call on April 22, 2023, GRACE indicated to Inmate WRIGHT that Target Device-4 was her new telephone number. Inmate WRIGHT most recently contacted Target Device-4 on May 23, 2023.

## Technical Information

48.     In my training and experience, I have learned that the Service Providers are companies that provide cellular communications service to the general public. I also know that providers of cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

49.     Based on my training and experience, I know that the Service Providers can collect cell-site data about the Target Cell Phones. I also know that wireless providers typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2)

the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as the Service Provider typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

50.     I know that some providers of cellular telephone service have technical capabilities that allow them to collect and generate E-911 Phase II data, also known as GPS data or latitude-longitude data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. As discussed above, cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data. Based on my training and experience, I know that the Service Provider can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available.

51.     Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it. Depending on the cellular network and the device, the

embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers – as transmitted from a cellular device to a cellular antenna or tower – can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

52.     Based on my training and experience, I know that wireless providers such as the Service Providers typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as the Service Provider typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the Target Cell Phone's user or users and may assist in the identification of co-conspirators and/or victims.

### AUTHORIZATION REQUEST

53.     Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

54.     I further request that the Court direct the Service Providers to disclose to the government any information described in Section I of Attachment B that is within their possession, custody, or control.

55.     I also request that the Court direct the Service Providers to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with the Service Providers' services, including by initiating a signal to determine the location of the Target Cell Phones on a Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate the Service Providers for reasonable expenses incurred in furnishing such facilities or assistance.

56.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cell Phones would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. See 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. See 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510)

or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. See 18 U.S.C. § 3103a(b)(2).

57.     Because the warrant will be served on the Service Providers, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phones outside of daytime hours.

**<u>ATTACHMENT A</u>**

**Matter No. 2023R00184**

**Property to Be Searched**

1.  Records and information associated with the following cellular telephones (collectively, the "Target Cell Phones"):

    a.  the phone assigned cellular telephone call number (414) 982-9371 ("Target Device-1"), with service provided by Sprint, subscribed to by AMANDA DEBERRY;

    b.  the phone assigned cellular telephone call number ███████ ("Target Device-2"), with service provided by T-Mobile, subscribed to by ███ ███████;

    c.  the phone assigned cellular telephone number ███████ ("Target Device-3"), with service provided by AT&T, believed to be used by ███████ and,

    d.  the phone assigned cellular telephone number (414) 507-2171 ("Target Device-4"), with service provided by U.S. Cellular (collectively with Sprint, AT&T, and T-Mobile, the "Service Providers"), believed to be used by JOHANNA GRACE.

2.  The Target Cell Phones.

# ATTACHMENT B

## Matter No. 2023R00184

## Particular Things to be Seized

## I. Information To Be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of a Service Provider, including any information that has been deleted but is still available to a Service Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), a Service Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A.

    a. The following subscriber and historical information about the customers or subscribers associated with the Target Cell Phones for the time period of **January 1, 2023 – Current Date**:

        i. Names (including subscriber names, usernames, and screen names);

        ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii. Local and long-distance telephone connection records;

        iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v. Length of service (including start date) and types of service utilized;

        vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

        vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Cell Phone, including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

(B) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received) as well as per-call measurement data (also known as "real-time tool" or "RTT").

b. Information associated with each communication to and from the Target Cell Phones for a period of 30 days from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii. Source and destination telephone numbers;

iii. Date, time, and duration of communication; and

iv. All data about the cell towers (i.e., antenna towers covering specific geographic areas) and sectors (i.e., faces of the towers) to which the Target Cell Phone will connect at the beginning and end of each communication, as well as per-call measurement data (also known as "real-time tool" or "RTT").

The Court has also issued an order pursuant to 18 U.S.C. § 3123, dated today, for such information associated with the Target Cell Phones.

c. Information about the location of the Target Cell Phones for a period of 30 days, during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location Information to the government. In addition, the Provider must furnish the government all information, facilities, and technical assistance necessary to

25

accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Provider for reasonable expenses incurred in furnishing such facilities or assistance.

ii. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence of the violation of federal law, including 18 U.S.C. §§ 371, 1512, and 1791 (the "SUBJECT OFFENSES").